265 P.2d 432

**OLVEY**

v.

**CALIZONA LAND & CATTLE CO.**

No. 5709.

Supreme Court of Arizona.

Jan. 18, 1954.

Edwin Beauchamp, Phoenix, for appellants.

Leslie C. Hardy, Phoenix, for appellee.

PHELPS, Chief Justice.

This is an appeal from an order directing a verdict in favor of defendant at the close of all the evidence in the case on plaintiffs' claim for services rendered as veterinarians and surgeons, from the judgment entered thereon, and from an order denying their motion for a new trial.

Appellants, hereinafter referred to as plaintiffs, at the times herein mentioned were duly licensed veterinarians in this state and engaged in the practice of their profession under the partnership name of "Stockyards Veterinarians" with offices in the administration building of the Tovrea Packing Company at Phoenix, Arizona. Their practice was confined almost exclusively to the treatment of cattle located in the Tovrea feeding pens at their packing plant. Rather a large number of cattle feeders of the state contracted with the Tovrea Packing Company to feed their cattle in the Tovrea feeding pens preparatory to selling them upon the market for butchering purposes. The number of cattle being fed in these pens averaged around 25,000 head daily throughout the year. Among those who were thus feeding cattle was the Calizona Land and Cattle Company, a corporation, appellee, hereinafter referred to as defendant. Plaintiffs performed practically all the veterinarian services rendered at the Tovrea packing plant and in particular rendered such services to defendant who, at the time the bill involved in this litigation was incurred, was feeding approximately 3,777 head of young cattle there.

Defendant's cattle at the times herein mentioned were shipped into Arizona from Houston, San Antonio and Fort Worth, Texas. At the time of their arrival a considerable number of them were suffering from hemorrhagic septicemia followed by pneumonia from which a large number thereof later died. Although plaintiffs had no business connection with the Tovrea Packing Company except the renting of their offices from it, the Tovrea Packing Company, as a matter of convenience to the cattlemen, paid plaintiffs their charges for professional services each month upon being furnished the amount thereof by plaintiffs and charged the same to the cattlemen and collected therefor from them at the time they paid their feeding charges.

Defendant had originally arranged with Dr. Olvey, one of the above-named copartners to do its veterinary work which he did for several years and up until the latter part of September or early part of October, 1950, at which time he became ill and his copartners, Doctors King and Powell, treated defendant's cattle without any assistance from Dr Olvey during October and November. These were the months in which defendant claims to have suffered the greatest losses. Defendant paid the bills through the Tovrea Packing Company as above related until November, 1950. Plaintiffs' bill for November amounted to $1,792 which defendant refused to pay and plaintiffs brought this action for its recovery.

Defendant in its answer interposed three separate defenses but insofar as this appeal is concerned we are presented only with the issue raised in the first defense which is to the effect that plaintiffs at the time alleged therein were practicing veterinary medicine under an assumed name in violation of the provisions of section 67–1908, A.C.A.1939, and that by reason thereof their conduct as veterinarians was contrary to said law and that the contract of employment entered into between plaintiffs and defendant was and is void and therefore plaintiffs ought not to be permitted to maintain this action and that it should have been dismissed. Defendant also filed a cross-claim against plaintiffs seeking damages for malpractice. At the close of all the evidence the court instructed a verdict in favor of defendant on the complaint upon the ground set up in its first defense and in favor of plaintiffs on the counterclaim. No appeal was taken by defendant from the court's adverse ruling on its counterclaim but plaintiffs, as above stated, appealed from the rulings of the court based upon their complaint.

Plaintiffs claim, first, that the practice of their profession under the partnership name of "Stockyards Veterinarians" does not violate the provisions of section 67–1908, supra, and secondly, that even if the court should hold that it does violate said section, it does not have the effect of rendering void the contract between plaintiffs and defendant.

Section 67–1908, supra, reads as follows:

*"Violations defined — Penalty. —* A person practicing veterinary medicine under a false or assumed name, or falsely personating another practitioner, or violating any provision of this article, or fraudulently obtaining a veterinary medical diploma, license or record of registration, or practicing veterinary medicine or surgery without a license and registration, or, without legal authorization so to do, appending a veterinary title to his name, or assuming or advertising a veterinary title conveying the impression that he is a lawful practitioner of veterinary medicine or surgery, shall be guilty of a misdemeanor, and punished by a fine of not more than fifty dollars ($50.00)

or by imprisonment in the county jail not more than twenty-five (25) days, or both such fine and imprisonment."

It is contended by plaintiffs that there is a vast difference in the meaning of the terms "assumed or fictitious name" and "false or assumed name." That while the words "false" and "fictitious" according to Webster's International Dictionary, 2d Ed., pp. 914, 940, both include the definition "not genuine", "not real", that the difference in the words lies in the fact that "false" implies a "design to deceive" while no such implication arises from the use of the word "fictitious." They conclude, therefore, that the word "assumed" as used in section 67–1908, supra, must be given a different interpretation from that given it when used in connection with the word "fictitious". In other words, that it must be interpreted in the light of the words with which it is associated under the maxim "noscitur a sociis."

We agree with this view. A careful analysis of section 67–1908, supra, clearly indicates to us that the legislature in the exercise of its police power intended to prevent the perpetration of a fraud upon livestock owners by means of false or fraudulent representations or acts. Following the declaration that it is a violation of section 67–1908, supra, to practice veterinary medicine "under a false or assumed name" said section then declares that it is a violation of the act to *falsely* personate another practitioner; to *fraudulently* obtain a veterinary medical diploma, license, or record of registration, or to *practice veterinary medicine or surgery without a license* and registration or *without legal authorization so to do;* appending a veterinary title to his name or *assuming or advertising a veterinary title conveying the impression that he is a lawful practitioner of veterinary medicine and surgery, etc.* Each and all of these acts and representations bear the unmistakable badge of fraud, compelling the conclusion above reached that the intent and purpose of the legislature was to protect livestock men from imposition through fraud. The character of the word "assumed" as used in the above section must therefore be determined " 'by considering the company in which it is found and the meaning of the terms which are associated with it.' " Southern Pac. Co. v. State Corporation Commission, 39 Ariz. 1, 3 P.2d 518, 522. The court in this case quoting from Black on Interpretation of Laws (2d Ed.) section 67, p. 194, had the following to say:

"The applicable rule of interpretation will not permit the construction of the phrase in question contended for by appellees. It is said: 'Associated words explain and limit each other. When a word used in a statute is ambiguous or vague, its meaning may be made clear and specific by considering the company in which it is found and the meaning of the terms which are associated with it.' "

It is not a violation of law to use an assumed name. Madam Perkins served as Secretary of Labor during a great portion of the Roosevelt administration under an assumed name. So far as we are advised all movie actors and actresses work under assumed names. All partnership names are assumed but they are not false and if the true names of the copartners are recorded in the office of the county recorder in Arizona, their business transactions are valid and enforceable.

It is argued by counsel for defendant that the rule of interpretation in the maxim, "noscitur a sociis", cannot be applied unless the word or phrase used is vague or ambiguous and that the word "assumed" is neither vague nor ambiguous. There are many words in the English language which must be interpreted in the light of the context in which they are used, meaning one thing in one context and something entirely different in another. The word "agent" is no more vague or ambiguous than the word "assumed". Yet the California Supreme Court in the case of Vilardo v. Sacramento County, 54 Cal.App.2d 413, 129 P.2d 165, 168, in construing the phrase "an attorney, counsel, or agent" held that under the maxim "noscitur a sociis", the word "agent" must be limited by the words "attorney" and "counsel".

We therefore hold that plaintiffs, in conducting their profession under the name of "Stockyards Veterinarians" did not violate the provisions of section 67–1908, supra. There is not the slightest evidence of fraud or deceit in their conduct nor is there any indication that their practice under the assumed name of "Stockyards Veterinarians" in any wise affected the defendant, contributing in any degree to the loss sustained by it as a result of the disease with which its cattle were inflicted. The court, by directing a verdict for the plaintiffs on the counterclaim necessarily found that they were not guilty of malpractice. Having reached this conclusion, it becomes unnecessary to pass upon the other question raised.

A study of the transcript of the evidence introduced at the trial which required five days contains nothing that indicates that the charges made by plaintiffs were incorrect or unreasonable and in view of the fact that a retrial of the cause would result in great expense to both parties without changing the result, it is ordered that the judgment of the lower court be reversed and the cause remanded with directions to enter judgment for plaintiffs as prayed for.

STANFORD, LA PRADE, UDALL and WINDES, JJ., concur.